# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | | |
|---|---|---|---|
| TRAY TURNER, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | No. 3:15-cv-00114 | |
| | ) | REEVES/GUYTON | |
| DEBRA JOHNSON, Warden, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## MEMORANDUM OPINION

Tray Turner ("Petitioner"), an inmate at the Turney Center Industrial Complex, brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement pursuant to a 2010 judgment issued by the Knox County Criminal Court [Doc. 1]. Respondent filed a response in opposition thereto [Doc. 8], as well as a copy of the state record. Petitioner then filed a reply to Respondent's response [Doc. 15]. Petitioner has also filed a motion for hearing [Doc. 31]. For the reasons set forth below, the Court determines that no evidentiary hearing is warranted in this case, Petitioner's § 2254 petition [Doc. 1] will be **DENIED,** Petitioner's motion for hearing [Doc. 31] will be **DENIED**, and this action will be **DISMISSED**.

## I.     PROCEDURAL HISTORY

In 2010, after a jury trial, Petitioner was convicted of one count of aggravated robbery and one count of resisting arrest, and was sentenced to 14 years in prison [State Court Record, Attachment 1 p. 31–32]. The judgment was affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA"), and the Tennessee Supreme Court ("TSC") denied permission to

appeal. *State v. Tray Turner*, No. E2010-2540-CCA-R3-CD, 2012 WL 1077153 (Tenn. Crim. App. Mar. 30, 2012), *perm. app. denied* (Tenn. Aug. 16, 2012).

On August 16, 2013, Petitioner filed his pro se petition for post-conviction relief, pursuant to Tennessee Code Annotated § 40-30-101, *et seq.*, in the Knox County Criminal Court [State Court Record, Attachment 10 p. 416–75]. He was thereafter appointed counsel, and the petition was amended [*Id.* at 485]. The Knox County Criminal Court denied the amended petition on March 10, 2014 [*Id.* at 495]. The TCCA subsequently affirmed this denial on November 24, 2014. *Tray D. Turner v. State*, No. E2014-00666-CCA-R3-PC, 2014 WL 665766 (Tenn. Crim. App. Nov. 24, 2014), *perm. app. denied* (Tenn. Feb. 12, 2015).

However, on November 3, 2014, Petitioner filed a motion to remove counsel and to withdraw the brief submitted by his counsel [Doc. 15-2 p. 1–3]. On December 8, 2014, Petitioner filed a pro se petition to rehear, after the TCCA affirmed the denial of post-conviction relief [*See* Doc. 33-1]. Then, on December 30, 2014, the TCCA reviewed Petitioner's "petition to rehear, which . . . include[d] a request for leave to file a pro se appellant's brief in lieu of the brief previously filed by counsel," and ordered that "the court will further consider the petition to rehear" upon Petitioner's filing of a pro se appellate brief within 25 days [Doc. 15-2 p. 7]. But, on February 19, 2015, the TCCA vacated its previous order and denied the petition to rehear, as the TCCA was previously unaware that on December 3, 2014, "[P]etitioner's counsel had filed a Tennessee Rule of Appellate Procedure 11 application for discretionary appeal with the [TSC]" [Doc. 33-1]. The TCCA held that "[t]he previous filing of the Rule 11 application terminates this court's role in the case" [*Id.*]. Then, the TSC denied Petitioner's Rule 11 application on February 12, 2015. *Tray D. Turner v. State*, No. E2014-00666-CCA-R3-PC, 2014 WL 665766 (Tenn. Crim. App. Nov. 24, 2014), *perm. app. denied* (Tenn. Feb. 12, 2015).

On March 6, 2015, Petitioner filed the instant petition for a writ of habeas corpus in this Court [Doc. 1]. Respondent—Warden Debra Johnson—thereafter filed an answer to the petition, arguing that Petitioner's claims were all procedurally defaulted or without merit [Doc. 8]. Petitioner then filed a reply to Respondent's response [Doc. 15]. This matter is now ripe for the Court's review.

## II. BACKGROUND

The following factual background is taken from the TCCA's opinion on Petitioner's appeal of the denial of his petition for post-conviction relief:

> The petitioner testified that trial counsel had met with him prior to trial, and, with respect to plea offers, the petitioner testified that trial counsel[:]
>
>> had come and visited me one time, and he had told me that the State had offered me 10 years at 35 percent, and—but it also included counter offers—offer, and, of course, me feeling like I wasn't guilty of robbery, and I—wanted to do as less time as possible, I went to the lower end, instead of 10, I went to six—I said six at 35. And he immediately told me, well, she's not going to do that.
>>
>> And then immediately after that he was like, but I think I can beat an aggravated assault anyway, because I think I can prove that this guy wasn't in fear because he ran out right behind you.
>>
>> And, you know, he's the attorney so I trusted what he said. So I went on with it.
>
> The petitioner clarified that the offer of 10 years at 35 percent was in exchange for a plea of guilty to aggravated assault. The petitioner stated that, when trial counsel presented this plea offer to him, counsel did not inform him that an aggravated robbery conviction would require service at 100 percent. The petitioner also testified that he believed aggravated assault meant that "you have to use a weapon on somebody"; because he knew that he had not actually harmed anyone during the K–Mart incident, he was under the impression that he had not committed an aggravated assault. The petitioner stated that, had he understood the elements of aggravated assault, he would have "jumped on" the State's offer of 10 years.

The petitioner testified that trial counsel discussed trial strategy with him "a lot," which is what "made me trust [trial counsel] so much because he was real adamant about how he believed I had . . . completed a theft, and that I hadn't committed robbery." With respect to trial testimony, the petitioner stated that trial counsel allowed the petitioner to decide whether he should testify and that counsel neither told him not to testify nor advised against his testifying. The petitioner acknowledged that the trial court had advised him that any prior criminal convictions could be used to impeach his credibility if he chose to testify, and he recalled that, when the trial court asked if he wished to testify, he responded that he had not yet made a decision. The trial court informed the petitioner that he could consider his decision with trial counsel for "a few minutes." The court took a break, during which the attorneys discussed with the trial court which of the petitioner's prior convictions could be admitted into evidence. The petitioner recalled that, when the jury returned to the courtroom, trial counsel informed the court that the defense would not be presenting any proof. Because the petitioner had never been involved in a trial, he was unaware that "proof" included testimony, and he "thought [he] was still going to testify." The petitioner stated that he was more concerned with telling the jury his version of events than he was with any potential repercussions from the exposure of his prior convictions through his trial testimony.

The petitioner stated that, if he had testified at trial, he would have explained that the customer service desk employee was his accomplice and that she had provided him with a K–Mart bag and a "nail puller," a device used to remove security tags from merchandise. According to the petitioner, Mr. Grantham stopped him in the vestibule and inquired about the stolen merchandise. The petitioner insisted that he had paid for the merchandise and told Mr. Grantham to check with the customer service desk employee. After Mr. Grantham walked back into the store to speak with that employee, the petitioner grabbed "like two items" from his shopping cart and ran outside. When he reached the getaway car, he discovered the passenger door was locked, and Mr. Grantham was close behind him. At that point, the petitioner produced the "nail puller" and pointed it at Mr. Grantham in order "to protect" himself. The petitioner then dropped all of the merchandise before fleeing in the getaway car.

On cross-examination, the petitioner conceded that, in the past, he had pleaded guilty to several crimes, including aggravated burglary, attempted aggravated robbery, aggravated robbery, and theft of property valued at $1,000 or more but less than $10,000. The petitioner denied that trial counsel had explained to him that an aggravated robbery conviction would necessitate sentencing as a Range II, multiple offender and would require 100 percent service. The petitioner admitted, however, that he recalled seeing the notice that the State was seeking enhanced punishment based on his prior convictions and that he understood the convictions could be used against him if he had testified.

Trial counsel testified that, given the petitioner's prior criminal history, the issue of having to serve 100 percent of a sentence was "one of the first things [he] researched" in the petitioner's case, and counsel remembered communicating to the petitioner the risk of receiving a sentence to be served at 100 percent if he went to trial. During trial preparation, trial counsel recalled the following:

> I remember going out to the detention facility, and if my memory serves right, I remember the conversation because we were in building two in the handicap, and we were talking about 10 years at whatever percentage rate it was as a[n] ag[gravated] assault, and [the petitioner] was always so adamant, and it's because of his belief in his intention—and I had no reason not to believe it—is that he didn't commit a robbery.

> And that the case law now—before we thought it was on our side, and we believed—and I thought we had a good argument for law about it not being a robbery, and that an offer of 10 years of an aggravated assault would be—if we got the robbery dismissed would be what he would get anyway.

> And that he was adamant about not going back to prison. That he couldn't do it. And he would rather roll the dice, and I remember that term being used. And I thought there might be a chance that we could get the—that I could show that the ag[gravated] robbery that there wasn't a weapon, because it was almost like a screwdriver looking thing.

> And also through the testimony at the preliminary hearing, I never believed [Mr. Grantham] was scared whatsoever of [the petitioner]. And so we thought we might have a chance to get it down to a misdemeanor, and would be willing to roll the dice on an aggravated assault, we believed that the ag[gravated] robbery argument was so strong.

Trial counsel testified that the petitioner made the decision to reject the offer of 10 years. With respect to the decision of whether the petitioner should testify at trial, trial counsel testified that it "was always [the petitioner's] decision," and counsel recalled "discussing many times about what would happen if the judge ruled to let [the petitioner's] ... prior record come in and what the jury would think about him if he took the stand." Trial counsel denied that he ever prevented the petitioner from testifying and insisted that had the petitioner "strongly felt like he wanted to testify, we would've been prepping testimony two weeks before that trial." On cross-examination, trial counsel reiterated that it was his belief and understanding that the petitioner "was not going to testify" based on their "game plan coming in" to trial. Counsel recalled "discussing strategy on why

or why not to testify, and that [the petitioner] believed that if the [prior] robberies came in that it would hurt him."

> With this evidence, the post-conviction court denied relief. With respect to the plea offer of 10 years for aggravated assault, the court accredited the testimony of trial counsel and found that counsel and the petitioner "discussed that issue at some length" but "decided they would roll the dice." Although the jury verdict was not the result they were seeking, the court found that trial counsel was not ineffective "merely because a different procedural strategy might have produced a different result." The post-conviction court also accredited the testimony of trial counsel that, had he known the petitioner wished to testify, he would have begun preparing the petitioner for his testimony two weeks prior to trial, which was not done. The court stated that fact "supports the proposition the defendant was fully advised of his right to testify, and just did not testify." Finally, the post-conviction court specifically found no ineffective assistance of counsel in the failure to request special jury instructions.

*Turner*, 2014 WL 6657566, at *2–5.

## III. STANDARD OF REVIEW

The Court must review Petitioner's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994).

For any claims that have been adjudicated on the merits by the state court, however, federal courts must utilize a "highly deferential" standard of review. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 88–89 (2011). Under the AEDPA, a court considering a habeas claim must defer to any decision by a state court concerning the claim, unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 40 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (defining clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

The standards set forth in the AEDPA are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)); *see also Harrington*, 562 U.S. at 102 ("If [§ 2254(d)] is difficult to meet, that is because it was meant to be."). Further, where findings of fact are supported by the record, they are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Ultimately, the AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

## IV.    ANALYSIS

In his § 2254 habeas petition, Petitioner generally alleges that he received ineffective assistance of counsel, without setting forth specific claims for relief [Doc. 1]. Respondent has

correctly detailed Petitioner's argument into specific claims for relief, claiming some of which Petitioner has procedurally defaulted [Doc. 8 p. 10–11]. The Court has also reviewed Petitioner's habeas petition, and did not uncover any additional claims. Also, in his reply to Respondent's response, Petitioner failed to challenge Respondent's depiction of his claims [Doc. 15]. Therefore, the Court will address the procedurally defaulted claims before addressing the remaining claims in turn.

### A.    Procedurally Defaulted Claims

First, Respondent argues that many of Petitioner's claims are procedurally defaulted [Doc. 8 p. 20–29]. Specifically, Respondent asserts that Petitioner has procedurally defaulted the following claims by not raising them in his appeal of the denial of his petition for post-conviction relief:

1. Trial Counsel was ineffective by failing to present Petitioner's testimony at trial [Doc. 1 p. 23];

2. Trial Counsel was ineffective by failing to request a jury instruction on shoplifting [Doc. 1 p. 25];

3. Trial Counsel was ineffective by failing to request, and by failing to object to, the trial court's failure to give a complete and accurate instruction on aggravated robbery [Doc. 1 p. 28];

4. Trial Counsel was ineffective by failing to request severance of Petitioner's resisting arrest charge [Doc. 1 p. 35]; and

5. Trial Counsel was ineffective by failing to advise Petitioner to plead guilty to resisting arrest [Doc. 1 p. 35].

[Doc. 8 p. 20–29]. In response, Petitioner asserts that he "supplanted his post [conviction] attorney's [brief] with that of his own," due to his trial attorney's ineffectiveness, and therefore he can establish cause for the procedural default of these ineffective assistance of counsel claims [Doc. 15 p. 6]. Additionally, Petitioner claims that *Martinez v. Ryan*, 566 U.S. 1 (2012) applies

to constitute cause, due to the alleged failures of his trial counsel and post-conviction attorney [*Id.* at 6–7].

A federal district court generally cannot entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). Once the petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).[1] Conversely, a petitioner who fails to raise his federal claim in the state courts, and who is now barred by a state procedural rule from returning with the claim to those courts, has committed a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A procedural default forecloses federal habeas review, unless a petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation, *id.* at 732, or where the petitioner demonstrates that he has "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Petitioner failed to raise the above-listed claims on appeal to the TCCA from the denial of his post-conviction petition [*See* State Court Record, Attachment 12]. Respondent asserts that these claims are procedurally defaulted, that Petitioner cannot establish cause for the default, and, further, that Petitioner cannot establish actual prejudice as a result of the alleged violations [Doc. 8 p. 20–29]. As a result of Petitioner not raising the above-listed claims on direct appeal of the denial of his post-conviction relief, Respondent argues that these claims are now barred

---

[1] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (noting that Rule 39 clearly removed Tennessee Supreme Court review as an antecedent for habeas review).

from presentation to the state courts by the statute of limitations under Tennessee Code Annotated § 40–30–102(a) and the "one petition" limitation of § 40–30–102(c) [*Id.*]. However, Petitioner claims that the ineffectiveness of post-conviction counsel resulted in the procedural default of his claims [Doc. 1 p. 36]; [Doc. 15 p. 6].

If a § 2254 petitioner failed to raise a claim on appeal, and thereby violated a state procedural rule, "that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for the default." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015). Because Petitioner is barred from returning to the state court on these claims, they have been procedurally defaulted and are not reviewable on habeas unless Petitioner can show cause to excuse his failure to comply with the state procedural rules, as well as actual prejudice.

Petitioner claims that he "supplanted his post [conviction] attorney's [brief] with that of his own," due to his trial attorney's ineffectiveness, and therefore he can establish cause for the procedural default of these ineffective assistance of counsel claims [Doc. 15 p. 6]. However, Petitioner was not permitted to proceed pro se, as the TCCA treated his motion to remove counsel and file a pro se brief as being included in his petition to rehear [*See* Doc. 15-2 p. 7]. As stated in its later opinion, the TCCA "essentially stay[ed] a ruling on the petition to rehear pending the petitioner's pro se lodging of a brief that he claimed would set forth issues that counsel should have raised in his appeal" [Doc. 33-1]. But, the TCCA later vacated its previous order, and did not consider Petitioner's petition to rehear, as Petitioner's counsel had already filed a Rule 11 application [*Id.*]. Thus, Petitioner "was not permitted to proceed pro se and his claims were never substantively addressed by the [TCCA] . . . [and the] issues have been exhausted through [Petitioner's] procedural default . . . ." *See Dance v. Parker*, No. 1:10-1179,

2013 WL 392464, at *5 (W.D. Tenn. Jan. 31, 2013) (holding petitioner's claims were procedurally defaulted after the petitioner was not permitted to file a pro se brief, as "[t]his procedural default operates as a complete and independent procedural bar to federal habeas review").

Additionally, a criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 163 (2000). The rights protected by the Sixth Amendment, including the right to self-representation, are rights that are available to prepare for trial and at the trial itself. However, the Sixth Amendment does not include any right to appeal. *Id.* at 160. Accordingly, there is no "constitutional entitlement to submit a pro se appellate brief on direct appeal in addition to the brief submitted by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). By accepting the assistance of counsel, the criminal appellant waives his right to present pro se briefs on direct appeal. *See Henderson v. Collins*, 101 F. Supp. 2d 866, 881 (S.D. Ohio 1999), *aff'd in part, vacated in part on other grounds*, 262 F.3d 615 (6th Cir. 2001) (holding defendant who was represented by counsel and also sought to submit pro se brief upon appeal did not have right to such hybrid representation).

Therefore, the fact that the TCCA failed to consider Petitioner's post-conviction pro se brief does not excuse Petitioner's default for failing to raise these claims on direct appeal. *See, e.g.*, *Wallace v. Sexton*, 570 F. App'x 443, 451 (6th Cir. 2014) ("We conclude that [Petitioner's] . . . claims were not fairly presented to the appropriate state court because a Tennessee procedural rule barred consideration of his supplemental pro se brief."); *McMeans*, 228 F.3d at 684 (holding decision of state appellate court to strike petitioner's pro se brief did not constitute cause to

excuse his procedural default of issues raised in the pro se brief but not in brief filed by appellate counsel).

Petitioner argues that the *Martinez* exception applies to excuse his procedural default, as he claims that his post-conviction counsel failed to present an adequate argument [Doc. 1 p. 36]; [Doc. 15 p. 6]. While Petitioner raised the above-listed claims in his petition and amended petition for post-conviction relief [State Court Record–Attachment 10], he failed to present the procedurally defaulted ineffective assistance of counsel claims on post-conviction appeal [State Court Record–Attachment 12].

Ordinarily, "attorney error in state post-conviction proceedings 'cannot constitute cause to excuse [a] default in federal habeas'" because there is no constitutional right to an attorney in those proceedings. *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015) (quoting *Coleman v. Thompson*, 501 U.S. 722, 757(1991)). However, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court established a narrow exception to the *Coleman* rule, holding that:

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17; *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (extending the *Martinez* exception to states whose procedural requirements make it "virtually impossible" to present an ineffective assistance claim on direct appeal, even if no outright prohibition exists). The Sixth Circuit subsequently held that the *Martinez-Trevino* exception is applicable in Tennessee because Tennessee's procedural framework directs defendants to file ineffective assistance claims in post-conviction proceedings, rather than on direct appeal. *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014).

However, a petitioner cannot use the ineffective assistance of counsel at the post-conviction *appellate* stage to excuse a procedural default, because it is not an initial-review collateral proceeding. *Wallace v. Sexton*, 570 F. App'x 443, 453 (6th Cir. 2014). The *Martinez* Court explicitly held that the narrow exception it carved out "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 16 (stating *Coleman* "held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel at *trial*"). Specifically, the *Martinez* exception does not apply to claims that were raised at the post-conviction initial-review proceeding but not preserved on post-conviction appeal. *See, e.g.*, *West v. Carpenter*, 790 F.3d 693, 698–99 (6th Cir. 2015) (holding that "attorney error at state post-conviction appellate proceedings cannot excuse procedural default under the *Martinez-Trevino* framework").

As set forth above, Petitioner did not properly raise these claims in his appeal of the denial of his post-conviction petition. Due to this failure, the above-listed claims have been procedurally defaulted. Additionally, Petitioner cannot establish cause, as the *Martinez* exception does not apply to excuse Petitioner's default of these claims, and the decision of the TCCA to strike Petitioner's pro se brief does not constitute cause. *See Wallace*, 570 F. App'x at 453; *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). Accordingly, because these claims have been procedurally defaulted, and Petitioner cannot establish cause, the above-listed claims will be **DISMISSED**.

### B. Remaining Ineffective Assistance of Counsel Claims

Petitioner also asserts three remaining ineffective assistance of counsel claims:

1. Trial Counsel was ineffective in pre-trial negotiations [Doc. 1 p. 15];

2. Trial Counsel was ineffective by developing an unreasonable theory of defense for trial [Doc. 1 p. 18]; and

3. Trial Counsel was ineffective by failing to ensure that Petitioner made a personal and knowing waiver of his right to testify [Doc. 1 p. 23].

[Doc. 8 p. 13–20].

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. Petitioner has the burden of showing both deficient performance and prejudice. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).

Under the first prong of the test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from

counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

In assessing counsel's performance, a court must presume that counsel's questioned actions might have been sound strategic decisions and must evaluate the alleged errors or omissions from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689; *see also Vasquez v. Jones*, 496 F.3d 564, 578 (6th Cir. 2007) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]") (quoting *Strickland*, 466 U.S. at 690). Only when the challenged actions are "outside the range of professionally competent assistance" will counsel's performance be considered constitutionally deficient. *Strickland*, 466 U.S. at 690.

The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. *Smith*, 528 U.S. at 285–86. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id.* at 686. While both prongs must be established to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

When a petitioner raises an ineffective assistance of counsel claim in his § 2254 petition, the Court must review the state court's ruling on that claim under the highly deferential standard of the AEDPA. Thus, in order to succeed on a federal claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that the state court's ruling on his ineffective assistance of counsel claim was an unreasonable application of *Strickland*. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). "Surmounting *Strickland*'s high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). The Court will address Petitioner's remaining ineffective assistance of counsel claims in turn, applying the above standard.

### 1.    Trial Counsel's Pre-Trial Negotiations

Petitioner claims that his trial counsel was ineffective by failing to adequately convey the state's original plea offer of ten years for the lesser charge of aggravated assault [Doc. 1 p. 15]. Petitioner alleges that he made the decision to reject the plea deal "under the inadequate and ill-advised guidance of his trial counsel," specifically "trial counsel's own misapplication of the law to the facts within Petitioner's case[2]" [*Id.*]. Further, Petitioner states that it was "incompetent for trial counsel to not . . . explain the benefits of the offer in comparison to the possible consequences if [Petitioner was] convicted at trial," and that "it was unreasonable . . . for trial

---

[2] Petitioner references the Tennessee Supreme Court's decisions in *State v. Swift*, 308 S.W.3d 827 (Tenn. 2010) and *State v. Owens*, 20 S.W.3d 634 (Tenn. 2000) to claim that his trial counsel "illogically relied solely upon an interpretation of Tennessee law applied to facts of other cases that were uniquely distinguishable from those of [his] case" [Doc. 1 p. 14]. In *Owens*, the Tennessee Supreme Court held that to constitute robbery, "the use of violence or fear must precede or be contemporaneous with the taking of property from the person." 20 S.W.3d at 641. Similarly, in *Swift*, the Tennessee Supreme Court stated that a theft was not elevated to robbery through the defendant's swinging a knife at store employees "several minutes after the taking was complete," as it "did not precede or occur contemporaneously with the removal and concealment" of the stolen item. 308 S.W.3d at 831.

counsel to introduce and propose the notion to [P]etitioner that he could beat the . . . lesser-charge [of aggravated assault]" [*Id.* at 17].

Respondent maintains that the state court reasonably applied the *Strickland* standard in concluding that Petitioner was not entitled to relief on this claim of ineffective assistance of his trial counsel [Doc. 8 p. 15]. However, Petitioner alleges that "the record does not show that trial counsel discussed this particular issue with Petitioner in contrast to what Petitioner would receive if [he] agreed to accept the State's plea offer" [Doc. 1 p. 15]. Further, Petitioner states that "it was trial counsel's belief and legal advice to him that he could beat aggravated assault at trial on matters of law, and [this] was ultimately the only reason Petitioner rejected the State's plea offer" [*Id.* at 16].

Petitioner raised this ground of ineffective assistance of counsel in his post-conviction proceedings in state court, but the TCCA denied relief as to his claim under the proper legal standard set forth in *Strickland*, holding:

> In our view, the record supports the post-conviction court's denial of relief. With respect to the petitioner's arguments that counsel failed to adequately evaluate the State's offer of 10 years in exchange for a plea of guilty to aggravated assault, the post-conviction court found that the petitioner's "adamant reluctance to go back to prison" was the impetus for his "roll[ing] the dice" and proceeding to trial, and the evidence does not preponderate against those findings . . . .
>
> . . .
>
> We find no error in the findings of the post-conviction court, and we hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial. Accordingly, the order of the post-conviction court is affirmed.

*Turner*, 2014 WL 6657566, at *6–7 (internal citations omitted).

The Court finds that Petitioner has not shown that he is entitled to relief under the AEDPA on this claim. First, the TCCA's determination was not "contrary to" *Strickland* because the TCCA applied its two-part test to the facts. Second, the TCCA's ineffective assistance determination was not based on an unreasonable determination of the facts or an unreasonable application of *Strickland*'s standards to those facts. *See* 28 U.S.C. §§ 2254(d). Further, the state court's determinations are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Petitioner has not submitted.

Therefore, because the Court finds that the TCCA reasonably concluded that counsel was not deficient in evaluating or advising Petitioner about the state's plea offer, Petitioner is not entitled to relief on this claim, and it will be **DISMISSED**.

### 2. Trial Counsel's Theory of Defense

Petitioner also claims that trial counsel was ineffective by "developing an unreasonable theory [for trial] that did not concede an aggravated assault defense and conviction as a lesser included offense to the charge of aggravated robbery" [Doc. 1 p. 18]. Petitioner alleges that trial counsel improperly argued that Petitioner was not guilty of aggravated robbery because he "had clandestinely obtained possession of the merchandise and demonstrated a completed theft before any allege[d] use of violence [or] putting in fear had occurred; and the alleged use of violence . . . . was to retain possession of the merchandise he had already acquired . . . ." [*Id.*]. Additionally, Petitioner claims that trial counsel "argued to the jury that Petitioner was also not guilty of aggravated assault . . . based upon . . . trial counsel's personal assumption that the store employee was not afraid of Petitioner" [*Id.*]. However, Petitioner states that because he "was on trial for aggravated robbery," it was "professionally incompetent" of trial counsel to "not argue

exclusively on the charged offense . . . and further concede that the alleged use of violence . . . against the store employee was an aggravated assault subsequent to a shoplifting incident, rather than aggravated robbery" [*Id.*].

Respondent asserts that the TCCA's rejection of this claim was "neither contrary to nor an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of facts" [Doc. 8 p. 17]. Further, Respondent claims that the trial court gave an instruction on aggravated assault as a lesser included offense of aggravated robbery [*Id.*]. However, in his reply to Respondent's response, Petitioner asserts that the TCCA's conclusion "was not reasonable in light of the evidence before it," and also was "not in accord with *Strickland*" [Doc. 15 p. 2].

Petitioner raised this ground of ineffective assistance of counsel in his post-conviction proceedings in state court, but the TCCA denied relief as to this claim, holding:

> In our view, the record supports the post-conviction court's denial of relief . . . . With respect to the strategy followed by trial counsel—that the petitioner's theft was completed when he entered the vestibule and that, similar to the case of *Swift*, the petitioner had committed, at worst, the crime of aggravated assault—the post-conviction court found that it was "a very plausible argument" even though it was ultimately unsuccessful and that it was within the "range of reasonable professional assistance." This court will grant no relief to the petitioner based on trial counsel's "sound, but unsuccessful, tactical decision."
>
> . . .
>
> We find no error in the findings of the post-conviction court, and we hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial.

*Turner*, 2014 WL 6657566, at *6–7 (internal citations omitted).

Based upon the foregoing, the Court concludes that the state courts' determinations that petitioner received the effective assistance of counsel were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court

in *Strickland v. Washington*, 466 U.S. 668 (1984)  When a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective.  Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington v. Richter,* 562 U.S. 86, 101 (2011).

The TCCA properly identified the applicable standard from *Strickland* and rejected Petitioner's ineffective-assistance claim, stating that Petitioner had "failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial."  *Turner*, 2014 WL 6657566, at *7.   The state court's failure to spell out every step of its *Strickland* analysis does not affect the validity of its ruling under AEDPA.  *See Harris v. Stovall*, 212 F.3d 940, 945 (6th Cir. 2000) ("Where a state court decides a constitutional issue . . . without extended discussion, a habeas court should then focus on the result of the state court's decision.").   The TCCA found credible counsel's testimony that these decisions were made strategically for the purposes of Petitioner's defense, and Petitioner has not demonstrated that these tactical decisions were outside the scope of professionally competent assistance.   Under *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Ultimately, Petitioner has failed to demonstrate that the state court's adjudication of this claim involved an unreasonable application of clearly established federal law or was based upon an unreasonable determination of the facts in light of the evidence before the state court.

Therefore, Petitioner is not entitled to habeas relief on the basis of this claim, and it will be **DISMISSED**.

### 3. Petitioner's Waiver of the Right to Testify

Lastly, Petitioner claims that his trial counsel was ineffective because he did not "object to the trial court's failure to ensure that Petitioner wanted to exercise his right to testify in his defense[,] or whether [Petitioner] personally, knowingly, voluntarily, and intelligently waive[d] his right to testify . . . ." [Doc. 1 p. 23]. Petitioner alleges that he was prejudiced by this failure, as he would have chosen to testify regarding his "intent and actions, and the sequence of events" of the alleged robbery [*Id.*]. Respondent claims that Petitioner has failed to demonstrate that the TCCA's rejection of Petitioner's ineffective assistance of counsel claim was contrary to or an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts of Petitioner's case [Doc. 8 p. 18].

In his reply to Respondent's response, Petitioner directs the Court's attention to his arguments made in his "pro se appellate brief that he submitted in place of his post-conviction attorney['s] brief" [Doc. 15 p. 3]. He states that he testified during the post-conviction hearing that he wished to testify because "the version of events presented by the store employee [was] 'completely inaccurate'" [Doc. 15 p. 3]. Petitioner claims that "the trial court initially address[ed] him regarding his right to testify," after which the court ordered a recess for Petitioner and his counsel to discuss whether he would testify [*Id.*]. Further, Petitioner states that he testified in his post-conviction hearing "that when the recess was over he expected the court to at some point . . . address him again so that he could inform the court that he had decided to testify" [*Id.* at 4]. In conclusion, Petitioner claims that "after the recess[,] the trial court should

have addressed him in open court and on the record if he in fact wanted to testify on his own behalf, which the trial court failed to do" [*Id.* at 6].

The trial court conducted a *Momon* colloquy[3] questioning Petitioner about his waiver of the right to testify [State Court Record, Attachment 2 p. 115–19]. After the trial court informed Petitioner of his right to testify, it asked Petitioner whether he had "talked with [his] lawyer about whether or not [Petitioner was] going to testify," to which Petitioner responded "I haven't come to a decision" [*Id.*]. Petitioner and his trial counsel were concerned about the potential admissibility and effect of his past convictions [*Id.*]. The trial court then took a recess to allow Petitioner and his counsel to further discuss whether he was going to testify [*Id.*]. After the recess, trial counsel stated that he did not have any other matters to take up before the jury entered [*Id.* at 121].

The post-conviction trial court denied relief as to this claim, stating that:

With respect to whether or not the [Petitioner] was deprived of his right to testify, the evidence shows that he was–he talked about it quite a bit with his attorney. He understood how it could help him, and he understood how it could hurt him.

We did do the *Momon* colloquy or advisal, and the evidence shows that he was fully aware of his right to testify. His lawyer never told him that he shouldn't testify or discourage[ ] him from it.

Counsel has testified to the best of his memory that they discussed it, they talked about it, and if he'd had any idea the [Petitioner] wanted to testify they would've engaged in trial prep starting two weeks before trial. And that was not done. That

_____

[3] In *Momon v. State of Tennessee*, 18 S.W. 3d 152 (Tenn. 2000), the Tennessee Supreme Court recognized that because the right of a criminal defendant to testify on their own behalf is both fundamental and personal, it "may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 162 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Therefore, the *Momon* Court held that the "waiver of the right to testify would not be presumed from a silent record and established a procedure to ensure that future records of trial proceedings would affirmatively demonstrate that a defendant personally waived his right testify." *Quintero v. Carpenter*, No. 3:09–cv–00106, 2014 WL 7139987, at *72 (M.D. Tenn. Dec. 12, 2014).

supports the proposition the [Petitioner] was fully advised of his right to testify, and just did not testify.

There is no procedural requirement that after *Momon* is done, and there's been a recess that the Court should readdress *Momon*. From there on it's strictly up to the [Petitioner], and the Court really shouldn't say anything else that might amount to a comment on whether he should testify or not. Certainly not in front of a jury.

[State Court Record, Attachment 11 p. 599–601].

After Petitioner's appeal of the denial of his petition for post-conviction relief, the TCCA stated that "[P]etitioner makes very brief arguments that 'he never formally waived his right to testify' . . . ." *Turner*, 2014 WL 6657566, at *7. The TCCA held that because Petitioner "made cursory arguments with no citation to authority," Petitioner waived consideration of this claim. *Id.* However, the TCCA further stated that "the post-conviction court specifically found that the petitioner 'was fully aware of his right to testify' following a *Momon* colloquy, and the record supports that finding." *Id.* To the extent that Petitioner is asserting a claim that trial counsel was ineffective by failing to present Petitioner's testimony at trial, the Court has already held that this claim was procedurally defaulted.

Although the right to testify is a fundamental right subject only to knowing and intelligent waiver, "waiver of certain fundamental rights can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference." *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007). The Sixth Circuit repeatedly has recognized that "'[a]lthough the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed.'" *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)). "Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent

defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Webber*, 208 F.3d at 551 (citing *United States v. Joelson*, 7 F.3d 174, 177 (6th Cir. 1993) (other internal citations omitted)). "A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel." *Stover*, 474 F.3d at 909 (citing *Joelson*, 7 F.3d at 177). "When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct." *Id.*

Petitioner states that trial counsel was ineffective by failing to object to the trial court's failure to ensure that Petitioner "knowingly, voluntarily, and intelligently waive[d] his right to testify" [Doc. 1 p. 23]. However, Petitioner has failed to establish that the trial court failed to ensure that Petitioner waived his right to testify. "The *Momon* opinion makes clear . . . that the newly announced 'procedures are prophylactic measures which are not themselves constitutionally required' . . . ." *Quintero v. Carpenter*, No. 3:09–cv–00106, 2014 WL 7139987, at *72 (M.D. Tenn. Dec. 12, 2014). Federal law permitted the trial court to presume from his silence that he waived his right to testify. *See Stover*, 474 F.3d at 909; *see, e.g.*, *Webber*, 208 F.3d at 551. Petitioner has failed to set forth clear and convincing evidence to overcome the presumption of correctness accorded to the TCCA's determination that Petitioner was aware of his right to testify, and therefore counsel was not ineffective. Again, the state court's failure to spell out every step of its *Strickland* analysis does not affect the validity of its ruling under AEDPA. *See Harris v. Stovall*, 212 F.3d 940, 945 (6th Cir. 2000) ("Where a state court decides a constitutional issue . . . without extended discussion, a habeas court should then focus on the result of the state court's decision."). Although Petitioner claims that his trial counsel was

ineffective by failing to demonstrate on the record that his waiver of his right to testify was intelligent and voluntary, the TCCA affirmed the post-conviction court's finding that "the [Petitioner] was fully advised of his right to testify, and just did not testify" [State Court Record, Attachment 11 p. 601]. *See Turner*, 2014 WL 6657566, at *7.

Therefore, Petitioner has failed to demonstrate that the decision of the TCCA was contrary to, or an unreasonable application of, clearly established federal law, as required by 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented at the state-court hearing, as required by 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner is not entitled to habeas relief on this claim and it will be **DISMISSED**.

## V.     PETITIONER'S MOTION FOR HEARING

Petitioner has also filed a motion docketed as a motion for hearing, in which Petitioner requests for his case to be "place[d] . . . on the next available docket to be heard" [Doc. 31 p. 1]. District courts retain wide discretion as to whether to conduct an evidentiary hearing in habeas cases. *See Abdur'Rahman v. Bell,* 226 F.3d 696, 706 (6th Cir. 2000). Nevertheless, an evidentiary hearing is mandatory only if factual allegations are made which, if proven, would entitle the petitioner to relief. *Vroman v. Brigano,* 346 F.3d 598, 606 (6th Cir. 2003). In this case, Petitioner has not made sufficient factual allegations warranting a hearing on this or any other ground.[4] Therefore, Petitioner's motion for hearing [Doc. 31] will be **DENIED**.

## VI.    CONCLUSION

For the reasons set forth above, the Court finds that none of Petitioner's claims warrant issuance of a writ. Therefore, Petitioner's petition for a writ of habeas corpus [Doc. 1] will be

---

[4] 28 U.S.C. § 2254(e)(2)(B) also states that a hearing shall not be conducted unless Petitioner established that no reasonable fact-finder would find him guilty of the offense. This requirement is also not met. *See Martin v. Mitchell*, 280 F.3d 594, 615 (6th Cir. 2002).

**DENIED**, Petitioner's motion for hearing [Doc. 31] will be **DENIED**, and this action will be **DISMISSED**.

## VII. CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a COA, should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. Specifically, as to the procedurally defaulted claims, jurists of reason would not debate the Court's finding that Petitioner did not fairly present these claims to the TCCA in a manner that rendered consideration of their merits likely and that the claims are therefore procedurally defaulted. Further, as to the claims that Petitioner did not procedurally default, Petitioner has not made a substantial showing of the ineffective assistance of counsel. Accordingly, a COA **SHALL NOT ISSUE**.

**AN APPROPRIATE ORDER WILL ENTER.**

**UNITED STATES DISTRICT JUDGE**